kiTJFFINj q. j.
 

 The reading of the will produces a strong impression, that the testator believed he had effectually advanced several of his children, and, at all events, that he meant in that paper to recognize such gifts, perfect or imperfect, as being good gifts, pr as made so thereby. He avows, in almost every disposition, the purpose of providing equally for his children, and that not by his will merely, but by the bounties bestowed in that instrument and others
 
 previously
 
 made to them altogether. The case agreed ought to have stated the facts more fully, as to thq advances to the several children, as it would have been much more satisfactory, if we could know the particular advances to each child, their relative values, and when and how conveyed, if at all. But meager as the statement is in that respect, the will itself — which must be believed — puts it beyond doubt, that Mrs. Boswell and all the children had received in the testator’s lifetime gifts, or what the testator intended as gifts, to a considerable value, excepting only the sqn Joseph. The first disposition, after that to the wife and the remainder of the personalty given to her for life, is to Joseph, and consists of the remainder in that land and of a slave, who was a valuable mechanic, and other chattels which, the testator says, “
 
 I now give him in order to make him equal with my other children.’’
 
 What equality was then in the testator’s mind ? Certainly it was not in relation to donations to the other children contained in the will. For aq the rest of his property, but the special gift to Joseph and a trifling legacy to a niece, is divided equally between all the children, including Joseph, and the issue of the deceased son Moses, with certain exceptions, which, however, only make it more plain, that the testator designed an absolute equality between his children and that equality constituted by taking into account previous gifts. The will does not merely say, that the residue should be divided equally among the testator’s children ; but it gives to each child separately, one-ninth part in distinct clauses, that the testator
 
 *53
 
 might the more conveniently and clearly deduct from or add to that ninth part of each child what such child had received, more or less than an average of the advances to the children, as measured by the special gift in the will to Joseph. And such deductions or additions are stated in the will to be directed, for the very purposes of fulfilling the prevailing intention of equality between the children. Thus, the sum of 60 dollars is deducted from Roger’s share of the residue, “ it being a sum
 
 received, over and above his equal part with my other
 
 children.” For a like reason he deducts from the shares of Heydon and Penelope, 300 dollars each; and excludes Mrs. Boswell from any share of the proceeds of a certain piece of land, which forms a part of the residue. On the other hand, he adds to Enoch’s ninth part 200 dollars, “ it being
 
 due
 
 to him in consequence of his
 
 having
 
 received no land; and, as he began the donations to his children by the special one to Joseph, and gave the reason therefor, so he concludes it by the gift to him of a then remaining ninth part of the residue, and annexes to it the remark, “ making it (Joseph’s share of the residue) equal to them allobviously meaning thereby again to declare, that he gave Joseph an equal share of the residue of his estate, notwithstanding the preceding special gift to him, because that preceding gift to him, in the will, was but to make up for previous gifts to the other children, made before he made his will. This view is confirmed by the terms used by the testator in the first gift to Joseph:
 
 “
 
 I
 
 now
 
 give him and in order to make him equal with my children thus contrasting the gift to
 
 this
 
 child,
 
 then
 
 made, with
 
 former
 
 gifts to the
 
 other
 
 children. It is true, that we cannot say, that the testator had really, that is, legally, given slaves to his other children ; because no written gifts appear, and such only are valid. And it is likewise true, that the language of the testator in his will does not amount to an express gift to the other children respectively, of the property put into their possession. But the understanding of the testator is so clearly seen, that those children should have that property, and his intention so manifest that they should have it, that there is a cogent impli
 
 *54
 
 cation of a gift in the will, or, at the best, of a confirmation of previous gifts. Suppose the testator had given slaves to his children by parol, and had said in his will, “I confirm the gifts heretofore made to my childrenalthough those were no gifts in law, for want of a writing, and because the donor did not die intestate, yet, undoubtedly, that would be a valid testamentary disposition, amounting to a present gift, upon the strength of the intention. This will, taken in all its parts, conveys the intention of the testator, not less clearly than if he had used the language supposed. We are not in possession, indeed, of
 
 data
 
 for an accurate estimate of the advances to the several children ; and if it were in our power to treat this case agreed as wediked, we should be disposed to refuse to give judgment on it, unless it were more fully stated. But as we are obliged to proceed on it as it is, we must determine the rights of the parties as they may appear to be, both on what is set forth and what is not set forth in the case. It is to be observed, then, that it does not appear that Mrs. Boswell received any thing from her father but the negroes. Nor are their numbers or values stated at the time the father sent them home with the daughter. It seems there are four now; but one of them is called in the declaration a child; one a boy ; and one a girl. The fourth is called a woman. So, it is probable that all except the woman have been born within the nineteen years, during which Boswell and the defendant have held them; and that when the will was made in 1832, this family was not of greater value than the extra gifts to Joseph j which, the will declares, were made to him in order to bring him upon an equality with Mrs. Boswell and the other brothers and sisters. Such an equality the testator could not have spoken of, unless in reference to previous bounties to the other children. Such a reference, in that connection, must, by implication, give those previous bounties efficiency, a t least, from that time: else the great; objectof the testator, as avowed by him in the gift to Joseph, will be defeated by his having so much more than theothers, instead of being thereby made equal with them.
 

 The Court is likewise of opinion, were the law otherwise
 
 *55
 
 upon the point already discussed, that yet the case is with the defendant, upon the point of an adverse possession for more than three years. This matter would, perhaps, have been more properly left to a jury ; because the intention of the parties, as for the most part giving character to the possession, is more appropriate to that body, aided by explanations from the bench. But as the parties have chosen to withdraw it from the jury and refer it to the court by a case agreed, it becomes our duty, according to our practice, to decide it; and, from necessity, to deduce from the facts stated such other inferences of fact as a jury would or ought to make. In this view of the question, it seems to us, that although an adverse possession is not expressly stated in the case agreed, yet it is fairly to be inferred, from the period at which the plaintiff settled the estate with the residúary legatees.
 

 The presumption, both legal and natural, is, that a person takes possession according to his title; and that as long as that possession lasts, it retains its original
 
 character;
 
 unless, indeed, it be so very long as thereby, or with other circumstances, to create a presumption of a subsequent conveyance. Hence, in general, the possession of a tenant or bailee is subsidiary to the title of the owner. But those persons may hold adversely; that is, in point of fact they may deny the title of those under whom they entered, and set up a title in themselves, and hold possession upon their own alleged title. Such a possession is in fact adverse; and it would seem that it can be nothing less in law. The difficulty in such cases, is, for a bailee to show, when the bailor is passive, that there has been a change in the character of the possession, in which there has been no chasm. But when the bailor demands possession and the other refuses, the latter subjects himself to an action as a trespasser, and consequently, the possession becomes adverse. So, if the dealings of the parties be such as can consist only with an admitted or an open claim of absolute property in the bailee, the same consequence follows; as if the bailee sell the thing, or his administrator distribute it as a part of his estate, the possession of the purchaser or next of kin is deemed adverse.
 

 
 *56
 
 The circumstances here seem equally strong with those mentioned, and they are taken from decided cases. Up to the death of the testator, Boswell held as bailee ; and, also, up to jkg assent 0p tke executors and their settlement of the estate, he is to be presumed to have held in that manner. But after that event, as an inference of fact, the contrary is to be presumed ; for it is almost impossible, that he should then have held, or that the plaintiffs should have considered him as holding in any other manner than upon a title asserted in himself and believed by all parties to be in him. The settlement in question was not merely for a particular legacy to Mrs. Boswell, but involved the whole residue; and all the children were necessary parties to it. Of the residue, which was then the subject of settlement between all the members of the family, these negroes, and any others then in like manner in possession of the other children, necessarily formed parts, unless they belonged to the possessors respectively. As parts of the residue, these slaves would have belonged legally to the executors, and two-ninths to them beneficially. One of them, as. the will says, had received from the testator in his lifetime property to the value of these negroes; and the other received by express words of the will gifts of equal value, which are declared therein to be made in order to produce an equality between the testator’s children. Yet the settlement was made by the whole family upon the basis, that these negroes, and, as far appears, all others, which the testator had advanced to the other children in his lifetime, did not form parts of the residue; and in that settlement all the parties to it have acquiesced for twelve years. From those facts, whatever may be the proper construction of the will, the inference is strong, that all the parties interested were firmly of opinion, that, either by reason of previous gifts, or by the provisions of the will, the negroes before delivered to the children did not fall into the residue; and therefore they were not claimed or divided as parts of the residue, but left to the several possessors as their property. To the purpose now considered, it is not material, whether that opinion was right or wrong. It certainly, we think, existed, and was acted on by the plaintiffs
 
 *57
 
 and all concerned'. Thus, both, sides concurred in renounce ing the relation of bailor and bailee; and afterwards, Boswell not only held for himself, but the plaintiffs must have known that he was so holding, and thought that he was thus right, fully holding. ' If that did not determine the possession under the bailor and turn it into one independent of him and adverse to him, nothing' could'.' As an inference of fact, then,' we find the possession to have been adverse, as' the plain result of the acts of the testator in his lifetime, the contents of the will, the transactions between the executors and all the other children in settling' the estate/and the acquiescence for so long a period in the possessions kept' after the division and settlements.'
 

 Pee. Cuiiiam, Judgment reversed and judgment of non-suit"¡